**UNITED STATES of America, Plaintiff,**

v.

**Sheryl A. (Samuelson) DOLD, Defendant.**

**Civ. No. 77–4052.**

United States District Court,
D. South Dakota, S. D.

Dec. 18, 1978.

Robert D. Hiaring, Acting U. S. Dist. Atty., D. S. D., Sioux Falls, S. D., for plaintiff.

Paul J. Dold, Howard, S. D., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This suit was initiated by the United States of America in an effort to recover money loaned to the defendant, Sheryl A. (Samuelson) Dold, by the First National Bank of Watertown, South Dakota. (The loan was insured by the federal government under the auspices of The Federally Insured Student Loan Program).

A court trial was held on October 16, 1978. The plaintiff and defendant were given an opportunity to brief the issues. The following constitute the findings of fact and conclusions of law of this Court.

### FINDINGS OF FACT

1.) Sheryl A. (Samuelson) Dold, the defendant, attended the University of South Dakota, during the normal academic year, from September of 1966 to May of 1970.

2.) During the time the defendant attended U.S.D., she made several loans in an effort to finance her education.

3.) Among the loans which she made during the years 1966 through 1970 are the

loans which are the subject of controversy in this suit.

4.) Sometime during the early summer of 1968, the defendant filled out an application for a Federally Insured Loan in which she requested a loan for $1,000. The application form was sent to the U.S.D. Financial Aid Office so that part B of the form could be completed by the school, which was done on July 23, 1968. Part D of the application was completed by the lender on August 9, 1968. (Gov't Ex. 2).

5.) A promissory note for $1,000 was signed by the defendant on August 5, 1968. A copy of the note was provided to the defendant, as was the custom of the bank. (Gov't Ex. 3).

6.) The note stated that the parties understood that:

"1. Pursuant to an Agreement with the U.S. Commissioner of Education, hereinafter called the 'Commissioner,' the lender has applied for Federal Loan Insurance under Title IV, Part B of the Higher Education Act of 1965, as amended hereinafter called the 'Act,' on all sums advanced pursuant to this note. Such terms of this note as are subject to interpretation shall be construed in the light of Federal Regulations pertaining to such Act, a copy of which is on file with the lender."

7.) The note sets out the terms and conditions of the loan. There are no cancellation provisions contained in the note whereby the maker is excused from paying part of all of the principal and interest if he engages in the profession of teaching. The terms and conditions do provide that the borrower's liability may be discharged where the borrower dies or becomes permanently and totally disabled or is relieved of his obligation to repay such loan through a discharge in bankruptcy.

8.) A second application for a Federally Insured Loan was filled out by the defendant on April 18, 1969, requesting a loan for $500. Part B was completed by the school on May 6, 1969. Part D was completed by the lender on June 4, 1969. (Gov't Ex. 1).

9.) A second promissory note, containing similar terms and conditions as the first note, was signed by the defendant on June 4, 1969. This note was for $500. A copy of this note was provided to the defendant, as was the custom of the bank. (Gov't Ex. 4).

10.) The defendant received valuable consideration in exchange for her promissory notes.

11.) The stated rate of interest on both promissory notes in question is 7%.

12.) According to defendant's application for a Federally Insured Loan, the defendant was born April 28, 1948. (Gov't Ex. 3). This comports with her testimony at the court trial where she stated that she was 20 years old when the first note was executed on August 5, 1968.

13.) The defendant graduated from the University of South Dakota, on May 24, 1970.

14.) The defendant was enrolled as a student at U.S.D. during the following academic year, September 1970 through May 1971. She was taking a total of three hours each semester which constitutes less than a full-time academic work load.

15.) The defendant was employed as a teacher in Centerville, South Dakota, from the fall of 1971 through the spring of 1973.

16.) The defendant was employed as a teacher in Howard, South Dakota, from the fall of 1973 through the spring of 1976.

17.) The First National Bank of Watertown, South Dakota, wrote several letters to the defendant in an effort to set up a repayment schedule. (Gov't Exs. 5, 6 & 7). The defendant did not respond to any of the lender's letters. The bank also wrote a letter to Mrs. Mabel Hanson, who was listed by the defendant as her nearest relative with whom she was not living. (Gov't Ex. 8).

18.) On May 1, 1972, the First National Bank of Watertown, South Dakota, applied to the U.S. Office of Education for the insurance claim on the Federally Insured Student Loan for Sheryl A. (Samuelson) Dold, the defendant. (Gov't Ex. 9). Correspondence between the Office of Education

and the First National Bank of Watertown, South Dakota, continued through August 7, 1972. During this period the First National Bank of Watertown, South Dakota, applied to and received from the Commissioner payment for the amount of loss it had sustained on its loan to the defendant. (Gov't Exs. 10–14).

19.) The insurance claim made by the First National Bank of Watertown, South Dakota, was paid by the U.S. Government, which then took an assignment of interest from the bank.

20.) The government made numerous attempts to contact the defendant in an effort to set up a repayment schedule. Contact was made in early 1973. (Gov't Exs. 15 and 16).

21.) The government attempted to contact the defendant by phone on numerous occasions. The government left messages at the defendant's place of employment but the defendant never contacted the government as requested.

22.) On May 29, 1975, a certified letter was sent to the defendant regarding the student loan and the fact that payments were not being made as required. The defendant received the letter; however, there was no response from her.

23.) On April 20, 1977, the defendant was contacted by phone, a conversation ensued but no payments on the loans were forthcoming.

24.) The Denver office of the Federally Insured Loans Branch of the Office of Education received a letter from Mr. Paul Dold dated February 17, 1973. The letter stated that: "there is no way that either Sheryl or I can make payments on any loan that Sheryl may have outstanding. I am still attending school at this time and either Sheryl, or I, or both of us has been attending school consistently since the loan was taken out, if one was taken out. . . ." (Gov't Ex. 15).

25.) This suit was filed by the government on May 31, 1977.

## CONCLUSIONS OF LAW

The defendant, through her answers, raises numerous defenses. First, that the court lacked jurisdiction over the subject matter of this litigation. Second, that the statute of limitation had run prior to the filing of this suit. Third, that the defendant, at the time she signed the promissory note was a minor and without the capacity to enter into a contractual relationship. Fourth, that the First National Bank of Watertown, South Dakota, was an indispensable party to the action. Fifth, that the doctrine of laches bars recovery under this action. Sixth, that the obligation as alleged in the complaint has been satisfied.

## FIRST DEFENSE

## LACK OF JURISDICTION

[1, 2] 1.) The defendant argues that this court lacks jurisdiction because the assignment by the First National Bank of Watertown, South Dakota, to the United States was inadequate. The court has found that the First National Bank of Watertown, South Dakota, was reimbursed by the United States for the loss the bank sustained on its loan to the defendant. This was in accordance with the promissory notes (Gov't Exs. 3 & 4) and 20 U.S.C.A. Section 1071 et seq. (1976). 20 U.S.C.A. Section 1080(b) (1976) states specifically that:

"*Upon payment* of the amount of the loss pursuant to subsection (a) of this section, *the United States shall be subrogated for all of the rights of the holder* of the obligation upon the insured loan and shall be entitled to an assignment of the note or other evidence of the insured loan by the insurance beneficiary." (emphasis added).

2.) This court concludes that the payment by the United States to the First National Bank of Watertown, South Dakota, was pursuant to subsection (a) of 20 U.S.C.A. Section 1080 (1976); therefore, the United States was subrogated for all of the rights of the holder of the obligation. The assignment was not inadequate and this court does not lack jurisdiction.

## SECOND DEFENSE

### STATUTE OF LIMITATIONS

■ 3.) The defendant argues that the statute of limitations had run before the United States filed this suit. It is the conclusion of this court that the statute of limitations in this action is six years as provided in 28 U.S.C.A. Section 2415(a) (1976).

4.) The statute of limitations began to run when the defendant defaulted on her loan. 20 U.S.C.A. Section 1080(e)(2) (1976) states that:

> "the term 'default' includes only such defaults as have existed for (A) one hundred and twenty days in the case of a loan which is repayable in monthly installments, or (B) one hundred and eighty days in the case of a loan which is repayable in less frequent installments."

5.) In addition to the one hundred and twenty to one hundred and eighty day period, there is a grace period of nine to twelve months as provided in 20 U.S.C.A. Section 1077(a)(2)(B) (1976). The promissory notes in question provided for a ten month "grace period." (Gov't Exs. 3 & 4).

6.) The note does not specify a particular repayment schedule. For the purposes of this opinion, the court will assume that the one hundred and twenty day period mentioned in 20 U.S.C.A. Section 1080(e)(2) (1976) applies, since the lender attempted to set up monthly payments. The default date is computed by adding the grace period, ten months, to the graduation date, here May 24, 1970, and then adding one hundred twenty days. The default date on the promissory notes in question is July 22, 1971.

7.) In computing the time period for the statute of limitations, six years is added to the default date which means that the stat-ute of limitations would have run on July 22, 1977. It is the conclusion of this court that the statute of limitations had not run when the United States filed its complaint on May 31, 1977.[1]

## THIRD DEFENSE

### CONTRACTUAL INCAPACITY

8.) The defendant claims that she was under twenty-one years of age at the time she signed the promissory notes; therefore, she lacked the capacity to enter into a binding contract. This defense is without any validity.

■ 9.) The age of minority in South Dakota for both males and females is eighteen. S.D.C.L. 26–1–1 (1972). Even prior to the 1972 amendment to that particular statute the age of minority for females was eighteen. S.D.C.L. 26–1–1 (1967). Both now and at the time the defendant signed the promissory notes, the law establishing the age of minority gives eighteen year old females the right to enter into contracts. The defendant was over eighteen years of age when she signed the promissory notes in 1968 and 1969. (Gov't Exs. 3 & 4). It is the conclusion of this court that the defendant did not lack contractual capacity at the time she signed the promissory notes.

## FOURTH DEFENSE

### INDISPENSABLE PARTIES

■ 10.) As the court stated earlier in this opinion, the United States is subrogated for all the rights of the holder of the obligation upon the insured loan, according to 20 U.S.C.A. Section 1080(b) (1976), where there has been payment of the loss. Clearly, the First National Bank of Watertown, South Dakota, is not an indispensable party where it received payment from the United States, as was the case here.

1. Since the court has reached the conclusion that the statute of limitations would have run on July 22, 1977, and that the filing of this suit was timely, the court does not feel it incumbent to decide the issue of whether the defendant's husband's letter (Gov't Ex. 15) acted as a written acknowledgement of the debt. Nor does the court determine the issue of whether a husband's letter could be accepted as an acknowledgement where the wife is the person who signed the note. (If the letter in question did act as an acknowledgement, the right of action would be deemed to accrue again at the time of the acknowledgement according to 28 U.S.C.A. Section 2415(a) (1976).)

## FIFTH DEFENSE

### DOCTRINE OF LACHES

■ 11.) The defendant's answer states: "That if the Defendant did have an obligation as alleged in the Complaint, the same is now barred by the Doctrine of Laches (sic)." That defense is not applicable to this case. The United States Supreme Court stated in *United States v. Summerlin Ancillary Administratrix*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940): "It is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights." That case involved a claim assigned to the United States.

12.) The Doctrine of Laches has a long history. In the case of *Refrigeration Transport Co. v. United States*, 297 F.Supp. 5, at 7 (N.D.Ga.1969), the court briefly outlined part of that history as follows:

"Laches is an equitable doctrine addressed to the discretion of the trial court, *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956); *City of Erlanger v. Berkmeyer*, 207 F.2d 832, 38 A.L.R.2d 918 (6th Cir. 1953), cert. den., 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411 (1953), in which each case must be determined according to its own particular circumstances. *Chisholm v. House*, 183 F.2d 698 (10th Cir. 1950). The crucial consideration is whether assertion of plaintiff's cause, through lapse of time, would do an injustice to the defendants. *Hunt v. Pick*, 240 F.2d 782 (10th Cir. 1957)."

13.) In this case, both the lending institution and the United States government made numerous attempts to set up a repayment schedule suitable to the defendant. The government was able to contact her on several occasions, but the defendant was evidently not interested in repaying her loan since she made no attempt at doing so. It stretches the imagination to say that the defendant was unaware that the government was making considerable efforts to collect on its claim. The government cannot be said to have slept on its rights. Nor can the court see how the defendant was prejudiced in any way by the government's filing of this suit some five years and ten months after the defendant defaulted on her note. The Doctrine of Laches is inapplicable in this case.

## SIXTH DEFENSE

### SATISFACTION OF THE OBLIGATION

14.) The defendant, in her answer, clings to the defense that if she did have an obligation, it has been satisfied. During the court trial, the defendant testified that she thought that her student loan was the type which could be partially satisfied by practicing the profession of teaching. She further testified that it was her understanding that if she taught for five years, 50% of her obligation would be cancelled, and if she taught for five years in a low income area, 100% of her obligation would be cancelled. Mrs. Dold also testified that she had taught for two years in Centerville, South Dakota, and for three years in Howard, South Dakota. She had been told that both Centerville and Howard were depressed areas which qualified for the special treatment regarding student loans to teachers.

15.) The notes in question (Gov't Exs. 3 & 4) were not the type which are cancelled by teaching. The defendant received a copy of the notes at the time she signed them. She testified that she read the notes, at least in part. The defendant's loan was made under the Guaranteed Student Loan Program, 20 U.S.C.A. Section 1071 et seq. (1976).

■ 16.) In these particular Guaranteed Student Loans, the terms and conditions under which a borrower's liability could be discharged are listed in the notes given to the defendant and they are set out in 20 U.S.C.A. Section 1087 (1976). According to the notes and the law which governs this type of loan, the only way in which a borrower's liability may be discharged is where the borrower dies, or becomes permanently and totally disabled, or is relieved of his obligation to repay such loan through a discharge in bankruptcy. Since none of these things has occurred here, the defendant is not entitled to be discharged from

her liability on account of the note being satisfied.[2]

The defendant has raised numerous defenses, none of which are meritorious. The United States is entitled to recover from the defendant the money loaned to her by the First National Bank of Watertown, South Dakota.

Counsel for the plaintiff shall prepare an appropriate order.

2. There are loans which entitle the borrower to have part of his liability discharged or all of it discharged if he teaches in a qualified institution. Loans of that nature are made under the National Defense Student Loan Program, 20 U.S.C.A. Section 421 et seq. (1976), and the National Direct Student Loan Program, 20 U.S.C.A. Section 1087aa et seq. (1976). (In fact, the National Direct Student Loan Program was not in existence until 1972 so the defendant clearly could not have obtained funds from this program in 1968 and 1969). Even if the defendant had obtained a loan which entitles the borrower to be discharged from liability for teaching, her five years of teaching would have entitled her to cancellation of only 50% of her loan. (The defendant taught in Centerville during the 1971–72 and 1972–73 school years and in Howard during the 1973–74 and 1974–75 and 1975–76 school years). In order to have 100% of the loan cancelled she would have had to teach in schools in which it was determined that there were a high concentration of students from low income families. Neither the Centerville Elementary School nor the Howard Elementary School qualified during the years the defendant was teaching at the respective schools. Pursuant to 20 U.S.C.A. § 1087ee(a)(2) (1976), the Commissioner of Education must give notice of the educational institutions which qualify as institutions having a high concentration of students from low-income families and he does so by publishing the list in the Federal Register. The lists for the years in question for South Dakota are published in 37 Fed.Reg. 14,173, 14,174 (1972); 39 Fed.Reg. 31,229, 31,230, 31,231, 31,232 (1974); 40 Fed.Reg. 51,937, 51,938 (1975). The cites for the lists enumerating qualified schools under the National Defense Student Loan Program were omitted since it has already been determined that the defendant could not have received such a loan in 1968 or 1969.