**UNITED STATES of America, Plaintiff,**

v.

**Elizabeth A. TILLERAAS, Defendant.**

**No. C80–911.**

United States District Court,
N. D. Ohio.

March 27, 1981.

Solomon Oliver, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

John Duda, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

The United States brings this action under 28 U.S.C. § 1345 [1] to recover the principal plus interest on a defaulted student loan insured by the government under the auspices of the Federally Insured Student Loan Program (FISLP) of the Higher Education Act of 1965 (the Act), 20 U.S.C. § 1071 *et seq.* Defendant has moved for summary judgment on the ground that there is no genuine issue of material fact, and as a matter of law the government's action is barred by the six-year statute of limitations set forth in 28 U.S.C. § 2415(a).

### I.

The complaint alleges that the defendant executed three promissory notes, the last on October 5, 1970, in order to obtain an educational loan from the Dakota National Bank (DNB), which loan was repayable in installments. It is further alleged that the loan was insured by the government under the Act. It is alleged that the defendant defaulted on the loan when the indebtedness became due and that pursuant to 45 C.F.R. § 177.48, the government paid the DNB's insurance claim and was assigned title to the note. It is finally alleged that the government made a demand for payment in full and that "Defendant is indebted to Plaintiff, holder of said note, in the principal amount of $3,392.06,[2] plus interest at 7% per annum...." This action was commenced on June 14, 1980.

■ Both parties agree that the six-year limitations period of 28 U.S.C. § 2415(a) [3] controls the timeliness of the government's action. Indeed it does. Federal law, not state law, governs the rights and liabilities of the government and the defendant under the Act. As stated in *United States v. Scholnick*, 606 F.2d 160, at 164 (6th Cir. 1979):

> [I]n any consideration of remedies available upon default of a federally held or insured loan, federal interest predominates over state interest. [Citations omitted.] This rule obtains because of an overriding federal interest in protecting the funds of the United States and in securing federal investments, thereby promoting the purposes of the National Housing Act [or, here, the FISLP].

The date of defendant's initial default is calculated as follows. The note executed by defendant provides for repayment in "periodic installments."[4] Even if, as defendant asserts, "no repayment schedule was ever set up in the present case," as a matter of law, this court applies the most lenient guidelines under the Act and federal regulations to defendant's note.

---

1. Section 1345 of Title 28 provides that the district courts shall have jurisdiction, except as otherwise provided, in "all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." Under 20 U.S.C. § 1082(a)(2), the federal district courts are expressly provided with jurisdiction over civil actions brought by or against the Commissioner of Education arising under the FISLP without regard to the amount in controversy. Inasmuch as the United States rather than the Commissioner of Education is the named plaintiff, jurisdiction under 28 U.S.C. § 1345 is proper.

2. The loans totaled $3,500.00, which was reduced by a $107.44 refund from defendant's school, leaving a balance of $3,392.56.

3. Section 2415(a) establishes a six-year limitations period for every action for money damages brought by the United States upon "any contract express or implied in law or fact...."

4. Section II of the note provides in part:

   Repayment of principal, together with interest thereon, shall be made in periodic installments in accordance with: Either (1) a repayment schedule to be provided by the lender prior to the commencement of the repayment period which will be made a part of this note or (2) the terms of a separate instrument which shall be subject to the terms of this note and which the borrower agrees to execute prior to commencement of the repayment period.

Under 45 C.F.R. § 177.507(b) and (d), defendant was entitled to take up to ten years to repay the loan from the start of the repayment period at minimum yearly installments of $360.00 per year. Under 20 U.S.C. § 1077(a)(2)(B), repayment must commence within a nine to twelve month "grace period" after a student ceases to carry one-half of a full-time academic workload. *See* 45 C.F.R. § 177.507. Defendant's note contains a twelve-month "grace period." In her affidavit, defendant states that she ceased to be enrolled in any educational institution on or about January 28, 1971. Thus, defendant's first installment payment was due on or about January 28, 1972. However, under 20 U.S.C. § 1080(e)(2)(B),

> the term "default" includes only such defaults as have existed for ... (B) one hundred and eighty days in the case of a loan which is repayable in less frequent [than monthly] installments.

By this court's construction, defendant's note was repayable in yearly installments. Thus, at least as to the first installment, the defendant was in "default" under the Act one hundred and eighty days after January 28, 1972, or on or about July 27, 1972. The court must decide whether this date of "default" marks the accrual of the government's present cause of action.

## II.

Defendant contends that the government's action accrued on the date she first defaulted on the loan, July 27, 1972. If so, the government's present action on the note was barred under 28 U.S.C. § 2415(a) after July 27, 1978.

The government, on the other hand, advances a two-fold argument. Although acknowledging that the defendant first defaulted on her loan in late July 1972, the government contends that the limitations period was tolled under 28 U.S.C. § 2416(c) "by reason of the defendant's failure to notify the creditor [the DNB] of her change of address thereby preventing the plaintiff from commencing action." In addition, the government asserts that its cause of action accrued, not upon defendant's default, but rather "on or about July 30, 1974" when "the Office of Education paid the [insurance] claim filed by the lender under the insurance provisions of [the Act]."[5] If its right of action did not accrue until July 30, 1974, the government's action is timely under 28 U.S.C. § 2415(a).

### A.

The tolling provision of 28 U.S.C. § 2416(c) provides:

> For purposes of computing the limitations periods established in section 2415, there shall be excluded all periods during which—
>
> \*      \*      \*      \*      \*      \*
>
> (c) facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances[.]

It is asserted that defendant did not inform her lender, the DNB, or the government, which became a holder of the note on July 30, 1974, of a change in her address when she married and moved to Cleveland, Ohio. As a result, the government claims that it was unable "to obtain a current address for defendant until May 10, 1979, as indicated on Government Exhibit C...." It is argued that under section 2416(c) the government is entitled to exclude from the running of the statute of limitations "that period of time from July 30, 1974 to May 10, 1979 during which the defendant's exact whereabouts were unknown" because "the defendant effectively prevented the plaintiff from pursuing the matter...."

---

**5.** Government's exhibit A is a copy of the October 5, 1970 note executed by defendant along with an assignment of the note from the DNB to the United States, dated May 10, 1974. Under 20 U.S.C. § 1080(a), it is only "[u]pon payment of the amount of loss [to the insured lender that] the United States shall be subro- gated for all of the rights of the holder ... and shall be entitled to an assignment of the note...." If, as the government asserts, it paid the DNB on July 30, 1974, then under section 1080(a) that is the date on which the government was as a matter of law subrogated to the rights of the DNB.

Section 2416(c) tolls the six-year statute of limitations on a contract claim brought by the government where the person sued, fraudulently conceals from the government a fact "material to the right of action." The legislative history of section 2416(c) makes this point clear.

> The committee understands that the principal application of this exclusion will probably be in connection with fraud situations. An example would be where the affirmative act of the wrongdoer has served to conceal the fraudulent act. This type of exclusion is to be found in the law of many states in both fraud and tort limitations. *The material facts that are not known must go to the very essence of the right of action.*

1966 U.S.Code Cong. and Admin.News pp. 2502, 2507–08. (Emphasis added.)

■ It is, however, unnecessary to determine in this case whether the tolling provision in section 2416(c) is limited to cases of fraudulent concealment. This court agrees with defendant that knowledge of the whereabouts of a student debtor under the Act is not a "fact[ ] material to the right of action" under section 2416(c).

The essence of the government's right of action, as framed in the complaint, is the contractual obligation expressed by the terms of the note and the defendant's alleged breach of that obligation to repay. The government certainly had knowledge of that breach no later than when it paid the insurance claim of the DNB. The government could have commenced its action at that time by suing the defendant at her last known place of residence. Under Fed.R.Civ.P. 4, an action is commenced by the filing of a complaint, even if service for some reason cannot be completed until a later date. *See United States v. Wahl*, 583 F.2d 285 (6th Cir. 1978). The knowledge of defendant's "exact whereabouts" is not material to the government's cause of action. Therefore, the government's ignorance of her whereabouts did not toll its action under section 2416(c).

**B.**

■ The court will now consider whether the government's right of action accrued, (1) when defendant first defaulted on the note on July 27, 1972, or (2) on July 30, 1974, when the government asserts the right of action arose upon its payment of DNB's insurance claim under 28 U.S.C. § 1080(a).

Defendant cites *United States v. Dold*, 462 F.Supp. 801 (S.D.S.D.1978) and *United States v. Cardinal*, 452 F.Supp. 542 (D.Vt. 1978), both actions where the limitations period under section 2415(a) was at issue. *Dold* was an action on a defaulted student loan under the FISLP. Although the court held that the government's action was not barred by section 2415(a), it was determined, without discussion or citation of authority, that the limitations period "began to run when the defendant defaulted on her loan." *Id.* at 805.

In *Cardinal*, the government sought to recover on a defaulted home improvement loan insured by the Federal Housing Administration. The court rejected both the government's contention that its cause of action accrued when it paid the lender's insurance claim and defendant's argument that the action accrued when she first defaulted on the loan. Instead, the court held that the government's action accrued on the date its assignor, the original lender, invoked the note's acceleration clause and demanded payment of the unpaid balance due. 452 F.Supp. at 547–48.

Contrary to defendant's contention, it is concluded that the entire unpaid balance of the note did not become due and owing when she first defaulted under the Act on July 27, 1972. The note executed by defendant provides for repayment in "periodic installments." It also contains an optional acceleration clause which any holder can exercise upon default. Where a note provides for repayment in installments, "each installment is a distinct cause of action and the statute [of limitations] begins to run against each installment from the time it matures or becomes due...." 12 Am. Jur.2d Bills and Notes § 1053 (1963). But

as correctly held in *Cardinal, supra*, at 547–48 (applying Vermont law), the limitations period on the entire debt does not begin to run until the holder elects to declare the balance due and owing under the acceleration clause. *See generally*, 12 Am.Jur.2d Bills and Notes § 1053 (1963) and Annot., 161 A.L.R. 1211 at 1218 (1946). Although defendant did not "default" under 20 U.S.C. § 1080(e)(2)(B) until July 27, 1972, the first installment of $360.00 was due and owing on or about January 28, 1972. Subsequent installments became due on January 28 of each succeeding year. Clearly a substantial portion of the note did not become due until the government (or the DNB) invoked the acceleration clause and demanded the entire balance due.

Paragraph 7 of the complaint alleges that the government invoked the note's acceleration clause by demanding payment in full. But the date of acceleration is not established in the record. A material issue of fact, therefore, exists as to the date the six-year limitations period accrued on the government's cause of action for any unpaid balance of the note, not already barred before the government made its demand.[6] It is reasonably assumed, however, for purposes of this motion, that the date of the demand was sometime after the government paid the DNB's insurance claim and acquired the note, that is, July 30, 1974. Thus, even if the six-year limitations period has passed as to the recovery of one or possibly more yearly installments, the cause of action for the accelerated balance of the note would not be barred under section 2415(a).

### C.

In *Cardinal*, the court rejected an accrual date, similar to that argued by the government here, based largely on the legislative history of section 2415. The court reasoned that the general purposes of the six-year limitations period[7] are

furthered to a much greater extent if the government is required to bring its claim within six years of when the claim first could be sued upon rather than within six years of when the government acquired the claim.

452 F.Supp. at 545. Such a construction the court said

eliminates both the potential defendant's uncertainty about how long he may be subject to suit . . ., and the possibility of holders, including the Government, unduly extending the time limitations of promissory notes guaranteed by the Government.

*Id.*

Both *Cardinal* and *Dold*, however, assume that the only theory of recovery available to the government is an action on the underlying obligation, as an assignee of the note from the original lending institution. This court concludes that the government may pursue an alternative theory of liability— that of an implied contract of suretyship created under the FISLP, between the government, as surety, and the defendant borrower, as principal.

---

6. The statement of district judge in *Cardinal, supra*, at n.8 is equally appropriate here:

Defendant's argument appears better directed to the question of when the statute of limitations began to run on the unpaid installments which were due prior to the time the holder exercised its option to accelerate. The parties have not addressed that question, and we do not decide it at this time.

7. The court listed the purposes of the six-year provision:

[A]s set out in the Senate Report, the Attorney General outlined six reasons for adopting the statute of limitations for actions brought by the Government: (1) As mentioned above, to "make the position of the Government more nearly equal to that of private litigants"; (2) to "encourag[e], trials at a sufficiently early time so that necessary witnesses and documents are available and memories are still fresh"; (3) "to reduce the costs of keeping records and detecting and collecting on Government claims"; (4) to "encourage . . . the agencies to refer their claims promptly to the Department of Justice for collection"; (5) to "avoid . . . judicial hostility to old claims asserted by the Government"; and (6) to "minimiz[e] . . . collection problems arising with respect to debtors who have died, disappeared, or gone bankrupt."

452 F.Supp. at 545. *See also* 1966 U.S.Code Cong. & Admin.News, p. 2513.

**6**

Generally, suretyship may be defined as a contractual relation whereby one person, the surety, agrees to answer for the debt, default or miscarriage of another, the principal, and as between the two who are bound, the principal rather than the surety should perform. 74 Am.Jur.2d Suretyship § 1 (1974). Of most importance here, under a suretyship theory the cause of action accrues on the date the surety pays the principal's debt, rather than on the date of the principal's original default. *Id.* at § 190; *see generally* Annot., 140 A.L.R. 888 (1942).

In *United States v. Wilson*, 478 F.Supp. 488 (M.D.Pa.1979), also an action under 20 U.S.C. § 1082(a), the government alleged that the defendant, a student borrower, had defaulted on a federally guaranteed loan. The question presented was

whether the Government can recover from the obligor of a defaulted federally insured student loan only on the theory of subrogation to the rights of the lender or whether it can rely on the common law right of a surety or guarantor to recover the amount of the defaulted loan from the obligor.

*Id.*, at 488. The court held that in addition to the subrogation rights provided in 20 U.S.C. § 1080(b), the government retained a common law right of suretyship to seek reimbursement from the principal obligor for paying his debt to the original lending bank.[8] The court reasoned as follows:

Wilson [the student borrower] makes much of the fact that he did not apply for federal loan insurance but only for a loan which was eligible for federal loan insurance. While it is true that the insurance is available only to the lender, it is clear that the debtor also benefits from the insurance because the program makes loans available to students which might not otherwise be available or would be available at higher rates of interest. The fact that there is no direct contractual relationship between Wilson and the

Government does not alter the functional relationship between Wilson and the Government. That relationship is analogous to the relationship between a principal and a guarantor or surety. The Government agreed to repay Wilson's lender if Wilson did not do so. Whether the relationship is described as that of a guarantor or as a surety, the government has the common law right to seek reimbursement from Wilson. *See Joe Balestrieri & Co. v. Commissioner*, 177 F.2d 867, 872 (9th Cir. 1949); *Bishoff v. Fehl*, 345 Pa. 539, 542, 29 A.2d 58 (1942).

*Id.* at 489–90.

Under 20 U.S.C. § 1078(a), an eligible student who obtains a federally insured loan is entitled to have the government pay on his or her behalf during the period of the loan a portion of the interest charged by the lending institution. The lending institution has a contractual right against the government to have that portion of the interest paid to it on eligible student loans. In addition, under 20 U.S.C. § 1080(a), the government is obligated upon the default of the student borrower to pay the lender the unpaid principal plus accrued interest on defaulted loans insured under the Act. Both the student borrower, under the promissory note, and the federal government, under the Act, are obligated to the lending institution that actually makes the educational loan to an eligible student. But as between the student and the government, equity clearly requires reimbursement by the student to the government which must answer to the lender for the student's default. As stated in *Wilson*, "the [student] debtor also benefits from the insurance because the program makes loans which might not otherwise be available or would be available at higher rates of interest" without the government's promise to pay.

Moreover, the legal relationship between a student borrower and the government is more "direct" than recognized in *Wilson*. The promissory note executed by the de-

---

**8.** *See also United States v. White*, No. CV77–1356 FW (unreported, C.D.Cal. Aug. 23, 1977) attached as exhibit D to the government's brief.

fendant is in a form drafted by the Department of Health, Education and Welfare (now the Department of Health and Human Services), for use by eligible lending institutions. The express terms of the note provide that the maker "understands and agrees" that "the lender has applied for Federal Loan Insurance under [the Act] on all sums advanced pursuant to this note" and that the note "shall be construed in light of Federal Regulations pertaining to such Act. . . ." Indeed, under section III of the note, it is the student borrower that pays the premiums for insurance coverage under the Act, or, effectively, the cost of the government's obligation to answer to the lending institution for the student's default.

█ Under these circumstances, it is concluded that by operation of law a legal relationship of surety to principal exists between plaintiff and defendant under the terms of the Act. The government's cause of action for reimbursement as a surety accrued when it paid the DNB for the defendant's alleged default.

At this point, however, the record does not reflect that the government in fact paid the DNB on July 30, 1974 as asserted in its brief. Assuming, for purposes of this motion, that the government can and does provide such evidence as part of the record, the government's action, commenced on June 14, 1980, would be timely under section 2415(a). On or before April 15, 1981, the government is directed to provide evidence by sworn affidavit, or otherwise, that it paid the DNB's insurance claim on July 30, 1974. Under this assumption, defendant's motion for summary judgment is overruled upon both grounds set forth above.

IT IS SO ORDERED.