**Paul GRAHAM, et al., Plaintiffs,**

v.

**SECURITY SAVINGS AND LOAN, et al., Defendants.**

**Civ. No. H87–700.**

United States District Court,
N.D. Indiana,
Hammond Division.

March 7, 1989.

Seymour Moskowitz and Ivan E. Bodensteiner, Valparaiso, Ind., for plaintiffs.

David O. Tittle, Indianapolis, Ind., Henry Weinstock, Los Angeles, Cal., Asst. U.S. Atty. Andrew Baker, Hammond, Ind., Mark Lucas, Lamber Genetos, Merrillville, Ind., Richard Malad, Indianapolis, Ind., Theodore Carter, III, U.S. Dept. of Justice, Washington, D.C., Bruce Schoumacher, Chicago, Ill., for defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on a Motion for Class Certification filed by the plaintiffs, Paul Graham and Estelle Sanders (hereafter Graham and Sanders) on May 25, 1988, a Motion to Dismiss filed by defendants, Western Loan Marketing Association (hereafter WLMA holder) and California Student Loan Finance Corporation (hereafter CSLFC holder), on March 1, 1988 and May 24, 1988, respectively; and a Motion For Leave to File an Amended Complaint filed by Graham and Sanders on June 2, 1988. For the reasons set forth below, the plaintiffs' Motion For Class Certification is DENIED; the defendants' Motions to Dismiss are hereby GRANTED; and the plaintiffs' Motion for Leave to File Amended Complaint is DENIED.[1]

BACKGROUND

On December 14, 1987, Graham and Sanders filed their original class action Complaint against the defendants, SSL lender, CSLFC holder, WLMA holder, HEAF insurer, and the U.S. guarantor.[2]

---

1. Security Savings & Loan (hereafter SSL lender) filed a Motion for Judgment On the Pleadings on August 30, 1988, and joined in WLMA and CSLFC holders' Motion to Dismiss. The remaining defendants, The Higher Education Assistance Foundation (hereafter HEAF insurer) and the United States Department of Education (hereafter U.S. guarantor) have filed Answers to the Complaint raising various defenses. This case is DISMISSED against all defendants because the grounds which would justify granting the Motion to Dismiss in favor of WLMA and CSLFC holder are equally applicable to the remaining defendants. See generally, *Colon v. Cutler–Hammer, Inc.,* 812 F.2d 357, 361, n. 26 (7th Cir.1987); *Malak v. Ass. Physicians, Inc.,* 784 F.2d 277, 280 (7th Cir.1986).

2. U.S.Dist.Ct., N.D.Ind. Local Rule 8 provides: Within ninety (90) days after the filing of complaint in a class action, unless this period is extended on a motion for good cause appearing, the plaintiff shall move for a determination under subdivision (c)(1) of Rule 23,

The class action was initiated by Graham and Sanders on behalf of all students who enrolled at the Gary, Indiana Branch of Adelphi Business College since July, 1985, who received guaranteed student loans from the SSL lender. The class alleges that various Adelphi Business College representatives made fraudulent oral misrepresentations to them regarding the school's classes, teachers, programs, placement facilities, and job opportunities. In July of 1987 the Adelphi Business College ceased operations after it filed for bankruptcy.

The main thrust of Graham and Sanders' Complaint is that the class was induced by fraudulent and deceptive practices of Adelphi Business College to enroll at the school. Once enrolled, these individuals took out guaranteed student loans to finance their education at Adelphi. Further, Adelphi received various Pell grants from the U.S. guarantor. Graham and Sanders allege that Adelphi failed to comply with the grant program's requirements in that the class did not receive the educational benefits for which Adelphi received the monies. Graham and Sanders' theories of recovery are based on the following claims: Breach of contract by Adelphi; fraudulent misrepresentation by Adelphi; negligent misrepresentation by Adelphi; a violation of the Higher Education Act by Adelphi, the SSL lender and the U.S. guarantor; a fraudulent breach of fiduciary duty by Adelphi; and a violation of the Indiana Deceptive Practices Act by Adelphi and the SSL lender. As a result of the alleged violation of these claims, the class seeks rescission or invalidation of their student loans and restoration of the eligibility for higher education funds. Although most of the allegations in the plaintiffs' Complaint are directed toward Adelphi, it is not a defendant in this action. Rather, Graham and Sanders have brought suit against the SSL lender, CSLFC and WLMA holders, the HEF insurer, and the U.S. guarantor of the student loans of former Adelphi students. Graham and Sanders allege that these defendants were closely connected by a mutually beneficial, continuous business arrangement, "with subjects the defendants to claims and defenses that the plaintiffs could assert against Adelphi." (Complaint, ¶¶ 1-2.)

On June 1, 1988, Graham and Sanders filed a Motion for Leave to File an Amended Class Action Complaint. The proposed Amended Complaint drops Graham as a named plaintiff and class representative and adds three new plaintiffs, in addition to seeking compensatory and punitive damages from all of the named defendants.

## DISCUSSION

Although this Court is aware that the defendants' Motions to Dismiss and the plaintiffs' Motion For Leave to File Amended Complaint are pending, Rule 23(c)(1) unambiguously requires that the Court grant or deny class certification before addressing the merits. *Bieneman v. City of Chicago*, 838 F.2d 962, 964 (7th Cir.1988); *Hickey v. Duffy*, 827 F.2d 234, 237 (7th Cir.1987); see also, *Rutan v. Republican Party of Illinois*, 848 F.2d 1396, 1400 (7th Cir.1988), reargued September 27, 1988, 868 F.2d 943, 946 (7th Cir.1989); and, *Bennett v. Tucker*, 827 F.2d 63, 66-67 (7th Cir. 1987). Graham and Sanders contend that certification is proper pursuant to Fed.R. Civ.P. 23(a) and 23(b)(2) or (3). However, the defendants contend that the proposed class cannot satisfy the commonality and typicality requirements under 23(a)(2) and (3). WLMA and CSLFC holders contend that these requirements cannot be met be-

Federal Rules of Civil Procedure, as to whether the class is to be maintained as a class action.

Graham and Sanders did not file their Motion for Class Certification until more than six (6) months had elapsed. The plaintiffs were well-aware of the time limitation of Local Rule 8 in that they state in their Memorandum "Local Rule 8 of the Northern District of Indiana fixes a specific time for such a determination [class certification]." (Memorandum at pp. 5-6) Clearly, Graham and Sanders' Motion for class

certification was filed well beyond the ninety (90) day time period prescribed by Local Rules. However, the defendants have failed to object to the timeliness of Graham and Sanders' Motion, and the Court will address the issue of class certification despite plaintiffs' non-compliance with the Local Rule. In future dealings, counsel is warned that the Court will strictly adhere to the ninety (90) day time requirement provided in Local Rule 8, unless a motion for an extension is sought and granted.

cause "the wrongdoing alleged in the Complaint is a diverse aggregation of oral misrepresentations by many Adelphi representatives on various different subjects to several hundred students over a two year period." (Prel. Opposition to Plaintiffs' Motion For Class Certification, at pp. 2–3)

The decision of whether to certify a class action is within the sound discretion of the district court. *First Interstate Bank of Nevada v. Chapman and Cutler*, 837 F.2d 775, 781 (7th Cir.1988); *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986). This decision is to made without reference to the merits of the case. *Bieneman*, 838 F.2d at 963–64; *Hickey*, 827 F.2d at 234; and, *Walters v. Thompson*, 615 F.Supp. 330, 333 (N.D.Ill.1985). In order to prevail, the class has the burden of establishing each of the requirements of Rule 23(a) and one of the requirements of the three sub-sections under Rule 23(b). *Eggleston v. Chicago Journeymen, Plumbers Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981), *cert. denied* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1986); *Ragsdale v. Turnock*, 625 F.Supp. 1212, 1219 (N.D.Ill.1985); *Faheem-el v. Klincar*, 600 F.Supp. 1029, 1037 (N.D.Ill.1984); and *Riordan v. Smith Barney*, 113 F.R.D. 60–62 (N.D.Ill.1986).

■ First, the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). A good faith estimate of the number of class members is sufficient to satisfy the numerosity requirement. *Borowski v. City of Burbank*, 101 F.R.D. 59, 61 (N.D.Ill.1984). In their Memorandum, Graham and Sanders contend that over 1500 students received loans from SSL lender. However, the records of Adelphi Business College reveal that of the 1900 students who received loans, over 300 were obtained from SSL lender. (Affidavit of Mary Daly–Baniak) Although there appears to be a discrepancy in the number of students who obtained loans from SSL lender, the fact that the number of class members cannot be determined with precision or exactness will not defeat class certification. Graham and Sanders have sufficiently ascertained a definable class and since joinder of several hundred people is clearly impracticable, the Court deems that the numerosity requirement is satisfied.

■ Secondly, there must exist questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). Throughout their Complaint, Graham and Sanders allege various acts of fraud and misrepresentation against Adelphi. It is a general rule that an action based substantially on oral rather than written communications is inappropriate for treatment as a class action suit. *Glick v. E.F. Hutton & Co.*, 106 F.R.D. 446 (E.D.Pa.1985); *Seiler v. E.F. Hutton & Co.*, 102 F.R.D. 880, 885 (D.N.J.1984). See also, *Simon v. Merill Lynch Pierce Fenner & Smith*, 482 F.2d 880, 882 (5th Cir. 1973); *Westlake v. Abrams*, 575 F.Supp. 58, 61–63 (N.D.Ga.1983); *McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D.Kan.1983).[3] In their Affidavits, plaintiffs state that they were approached individually on the streets of Gary by one of sixteen different Adelphi public relations representatives. According to the Complaint, Graham alleges he was approached by a male representative of Adelphi in September of 1986 and was promised high technology job opportunities. Although Graham completed his courses, he did not receive a degree, diploma or certificate. Sanders alleged she was approached by a female representative of Adelphi in August of 1986 and then made

---

**3.** However, an exception exists when the allegedly fraudulent oral communications are standardized. *Glick*, 106 F.R.D. at 449; *Seiler*, 102 F.R.D. at 888. Graham and Sanders attempt to show standardization of Adelphi's recruitment procedures by the affidavit of Renaye Bohanon Manley. Ms. Manley states she was instructed to distribute a survey and obtain good leads of persons who would serve as *"potential"* candidates for enrollment at Adelphi; anyone who had a verifiable permanent address, phone number, and no job. (Aff. ¶ 2) However, Manley then turned over her survey cards to "an admissions representative" whose job it was to contact the "leads" by telephone in an attempt to persuade them to enroll at Adelphi Business School. (Aff. ¶ 2(b)) Manley did not participate in any of the alleged standard oral sales pitches utilized to enroll students at Adelphi. Therefore, this Court is not satisfied that the oral communications used to enroll students at Adelphi were standardized.

an appointment to meet with another Adelphi employee. Although Sanders was promised job placement services, she alleges they were never provided.

■ It is clear from these factual allegations that there were various oral representations by numerous Adelphi employees made to different members of the alleged class. A common law fraud claim raises issues which are personal to each individual plaintiff. *Seiden v. Nicholson*, 69 F.R.D. 681 (N.D.Ill.1976). Approximately sixteen different Adelphi representatives made numerous oral representations regarding classes, programs, facilities and job opportunities to over 300 individuals. Since there are at least 300 separate oral representations made by Adelphi representatives over a two year period, this case is inappropriate for class certification in that the commonality requirement cannot be met. See, *Darms v. McCullough Oil Corp.*, 720 F.2d 490, 493 (8th Cir.1983); *Zandman v. Joseph*, 102 F.R.D. 924, 928 (N.D.Ind. 1984).[4]

Graham and Sanders have filed leave to amend their Complaint to drop Graham as a named class representative and add Adrean Brown, Roberta Jordan, and Francis Harner. It is within the Court's discretion to grant or deny a Motion to Amend pursuant to Fed.R.Civ.P. 15(a). *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir.1987); *Glick v. Koenig*, 766 F.2d 265, 276 (7th Cir.1985); and *Knapp v. Whitaker*, 757 F.2d 827, 849 (7th Cir.1985). The addition of these named plaintiffs will not satisfy the commonality nor the typicality requirements of Fed.R.Civ.P. 23(a). Although the proposed named plaintiffs did receive a certificate or diploma from Adelphi, they were also approached by various Adelphi representatives who made oral promises and representations to them regarding classes, teachers and job opportunities. Therefore, leave to amend the Complaint to drop Graham and add the three named plaintiffs will be DENIED.

MOTION TO DISMISS

■ Defendant, WLMA holder contends that plaintiffs' Complaint should be dismissed for failure to join a necessary party, namely: Adelphi. The Complaint fails to plead fraud with particularity and the relief requested by the plaintiffs, rescission and reinstatement, are inappropriate remedies under the Higher Education Act. Defendant CSLFC holder joins in WLMA holder's motion and asserts two additional grounds for the dismissal of plaintiffs' Complaint. First, that in the area of federally guaranteed student loans, the federal law governs remedies for default and pre-empts any state law claim for rescission. Secondly, CSLFC holder contends that any alleged fraud by Adelphi does not invalidate or authorize rescission of the guaranteed student loans obtained by the class members.

---

4. The Court is aware that not all factual or legal questions which are raised in a class action complaint need be common, so long as a single issue is common to all class members. Graham and Sanders allege that there are several common issues which include whether: The defendants violated the Higher Education Act; the recision of the loans is proper; and whether the defendants had a mutually beneficial continuous business arrangement which subjects them to the same claims and defenses the plaintiffs could have asserted against Adelphi. However, even assuming the commonality requirement was met, the proposed class fails to fulfill the typicality requirement of 23(a), (c)(3). An inquiry into typicality requires a comparison of the claims or defenses of the representatives with the claims or defenses of the class. *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980). The presence or even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class. *J.H. Cohn & Co. v. A.M. Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir.1980); *Zandman*, 102 F.R.D. at 930; and, *McNichols v. Loeb Rhoades & Co.*, 97 F.R. D. 331, 334 (N.D.Ill.1982). The defendants contend there are various defenses which may be applicable to some plaintiffs but not others, such as estoppel, latches, and comparative negligence. Some students may have failed to investigate Adelphi, while some enrolled or continued their studies at Adelphi even after they became aware of its alleged flaws. Moreover, some students may have relied on the alleged misrepresentations in their decisions to attend Adelphi, when others may have enrolled on their own volition. In a class of this size, the claim to have relied on oral representations, and the degree of reliance defeats the typicality requirement of 23(a)(3).

However, the plaintiffs contend that federal law does not pre-empt their right to rescind their student loans on the basis of Adelphi's fraud. Plaintiffs also contend they have sufficiently pleaded a cause of action based upon state law fraud.

In ruling on a Rule 12(b)(6) Motion to Dismiss, this Court must follow

the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957)

This Court must accept "all allegations in the Complaint as true." *Collins v. County of Kendall, Ill.,* 807 F.2d 95, 99 (7th Cir. 1986). See also: *Hison v. King and Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59, 65 (1984); and *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). In order to prevail, the defendants "must demonstrate that the plaintiff's claim, as set forth by the Complaint, is without legal consequence." *Gomez,* 811 F.2d at 1039.

The plaintiffs have alleged federal jurisdiction pursuant to 28 U.S.C. § 1331 on the basis of the Higher Education Act of 1965, 20 U.S.C. § 1001, *et seq.* They claim that Adelphi and the SSL lender "violated Title VII of the federal Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.* and the regulations promulgated thereunder. The promissory notes and guaranteed student loans are thus void and unenforceable." (Complaint at ¶ 36)

There is no dispute that the plaintiffs received guaranteed student loans to help finance their education through the guaranteed student loan program which is governed by the Higher Education Act, 20 U.S.C. § 1071 *et seq.*[5] They now seek to have their loans rescinded on the basis of a violation of state and federal law. It is true that federal law governs the remedies available upon default of federally held or insured loans. *Tilleraas,* 538 F.Supp. at 2. See generally, *U.S. v. Kimbell Foods, Inc.,* 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711, 722–23 (1979); *U.S. v. Landmark Park & Associates,* 795 F.2d 683, 685–86 (8th Cir.1986); *U.S. v. Victory Highway Village, Inc.,* 662 F.2d 488, 497 (8th Cir.1981); *U.S. v. Scholnick,* 606 F.2d 160, 164 (6th Cir.1979). The application of federal law to remedies upon default of these federal loans is warranted by the "overriding federal interests in protecting the funds of the United States and securing federal investments." *Victory Highway Village,* 662 F.2d at 497; see also, *Scholnick,* 606 F.2d at 164. Since there is a detailed and extensive body of federal law governing the guaranteed student loan program pursuant to 20 U.S.C. § 1071 *et seq.* and their regulations issued pursuant to 34 C.F.R. § 682 *et seq.,* federal law governs the remedies upon default of these guaranteed student loans and rescission based on fraud is not a permissible remedy.[6] According to the Act, a borrower's liability may be discharged only if the borrower dies, becomes permanently and completely disabled, or is relieved of his obligation to repay such a loan by a discharge in bankruptcy. 20 U.S.C. § 1087(a), (b)

---

5. None of the parties have provided the Court with a copy of the promissory note signed by these former students of Adelphi. As with most guaranteed student loans, the terms and conditions under which the borrower's liability can be discharged are listed on the note. See, *U.S. v. Tilleraas,* 538 F.Supp. 1, 7 (N.D.Ohio 1981), aff'd. 709 F.2d 1088 (6th Cir.1983); *Dold,* 462 F.Supp. at 806. However, certain terms and conditions are also found in the Act itself, *i.e.* 20 U.S.C. § 1087, 20 U.S.C. § 1083(a).

6. The guaranteed student loan statute does prohibit fraudulent activities by schools and lenders. The only remedies for alleged fraudulent activity are administrative penalties including a termination of eligibility to participate in a guaranteed student loan program. See, for example, 20 U.S.C. § 1080(c); § 1082(g), (h); § 1083(a), (c); § 1094(c). Although Adelphi went bankrupt before any alleged fraudulent misrepresentations were made known to the Secretary, the students are not without a remedy. See 80 Fed.Reg. 35966 (1985) to be codified at 34 C.F.R. §§ 682.500–682.515 (forbearance from enforcement). Further, *U.S. v. Tilleraas* is factually distinguishable on the point on which plaintiffs rely. In that instance the common law right was allowed, given the broad language of § 1080(b).

(1988 Supp.); 34 C.F.R. § 682.102(c); *U.S. v. Dold,* 462 F.Supp. 801, 806 (D.S.D.1978). Federal law provides for these sole remedies and pre-empts the plaintiffs' state law remedy of rescission.[7]

Even assuming federal law does not pre-empt this area and that plaintiffs are free to pursue the common law remedy of rescission based on fraud by Adelphi, plaintiffs' claim still fails. Plaintiffs have simply failed to allege any fraudulent activity on the part of any of the named defendants, nor are there any allegations that any of these defendants participated in any alleged fraud or had any knowledge or reason to know of any alleged fraud by Adelphi. An assignee is not liable for a violation by others. 20 U.S.C. § 1082(g)(5). Adelphi and the SSL lender were eligible under the guaranteed student loan provisions. Although a lender does have the responsibility to monitor the eligibility status of a school with which it does business, Adelphi was an eligible institution and plaintiffs have failed to allege that it was not. See *American Savings v. Bell,* 562 F.Supp. 4, 10 (D.D.C.1981). Plaintiff has simply failed to allege any fraudulent activities on the part of any of the named defendants in accordance with Fed.R.Civ.P. 9(b). See, *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). See also, *McKee v. Pope Bal-lard Shepard & Fowle, Ltd.,* 604 F.Supp. 927, 931 (N.D.Ill.1985).[8]

■ Further, this Court does not find that a private right of action exists under the Higher Education Act. There is a strong presumption against the creation of implied rights of action. *West Allis Memorial Hospital, Inc. v. Bowen,* 852 F.2d 251, 254 (7th Cir.1988). There is no indication of legislative intent to create such a remedy and it does not appear that it is "consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff[s]." *West Allis,* 852 F.2d at 255, citing two of the four factors in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). Subchapter IV of the Higher Education Act, 20 U.S.C. § 1070 provides that the purpose of the statute is "to assist in making available the benefits of post-secondary education to eligible students ... in institutions of higher education." Commensurate with this purpose, the Secretary has been given the authority to carry out the program to achieve the purpose of the statute. See, 20 U.S.C. §§ 1070, 1071, 1082, 1094. In accordance with this Act, institutions and lenders must meet certain requirements to be eligible to participate in this comprehensive federal student loan program. See, 20 U.S.C. §§ 1071, 1075, 1077, 1077(a), 1083.

7. Pre-emption may be found where expressly stated by Congress "the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation"; or state law conflicts with federal law or state law stands "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Calif. Federal Savings & Loan Assn. v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613, 623 (1987) (citations omitted). Not only is the federal law comprehensive regarding obligations, rights and remedies under the Higher Education Act governing federal or state law, 20 U.S.C. § 1070 *et seq.,* but a state law claim for rescission conflicts with federal objectives. As defendants point out "rescission of these loans would conflict with federal objectives in several ways. Rescission would discourage future participation in the GSL program by lenders and thwart Congress' intent 'to increase loan availability by making the [GSL] Program more attractive to commercial lenders'." (1980 U.S. Code Congress and Admin.News. p. 3168) The Court agrees that the "GSL program is and must be governed by uniform federal rules applicable to every lender, school and student in every state." (Reply, at p. 7)

8. The plaintiffs also seek damages for a breach of contract by Adelphi for allegedly failing to provide vocational training, education, and other services. This claim must also fail. Again, plaintiffs have alleged no wrongdoing on the part of any of the defendants. It is the school which must accurately inform the students about its educational programs, facilities, and faculty. See, 20 U.S.C. §§ 1082(h) and 1092(a). Students in default who have been sued by the United States have failed in their attempts to avoid loan obligations on the ground that the school failed to provide promised services, courses, or facilities. See, *U.S. v. Olavarrieta,* 632 F.Supp. 895 (S.D.Fla.1986), aff'd. 812 F.2d 640 (11th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987); *U.S. v. Whitesell,* 563 F.Supp. 1355, 1356 (D.S.D.1983); and *U.S. v. Lujan,* 520 F.Supp. 282, 283 (D.N.M. 1980).

The Act sets forth certain requirements on the lenders and institutions, places limits on the amount of loans available, and the interest rate applicable to such loans. The Act further sets forth an insurance program pursuant to 20 U.S.C. §§ 1070, 1078. After a review of the statute and regulations, it does not appear that Congress intended to provide a remedy for students in default of their obligation as a result of any alleged non-compliance with the Act by the institution or lender. An institution or lender is either an eligible institution and can participate in the federal loan program, or it is not. See, 20 U.S.C. §§ 1083(c), 1085. Here, both Adelphi and the SSL lender were determined to be eligible institutions according to the Higher Education Act. Accordingly, the only way a student could discharge a student loan obligation under the Act is to die, become disabled, or have the debt discharged in bankruptcy, none of which apply in this case.

It is true that an eligible lender such as SSL lender had a duty to monitor the eligibility status of the institution and to meet the disclosure requirements under the Act. 20 U.S.C. § 1083. However, Adelphi was, at all times, an eligible institution and the statute provides that failure to disclose under § 1083 does not "relieve a borrower of the obligation to repay a loan in accordance with its terms, [or] provide a basis for a claim for civil damages." 20 U.S.C. § 1083(c). Further, it is inconsistent with the scheme to provide a remedy such as recision. The statutes and regulations delegate power to the Department of Education to determine whether an institution is eligible and to supervise and enforce student loan program and a participant's conformance with the Act. See, 20 U.S.C. §§ 1082(g), 1085(a)—§ 1088; § 1094(c). See also, West Allis, 852 F.2d at 255. The Secretary has the power to limit, suspend, or terminate a lender's participation. 20 U.S.C. § 1082(h). If an institution has "engaged in substantial misrepresentations of the nature of its educational program, its financial charges, or the employability of its graduates, the Secretary may suspend or terminate the eligibility status for any and all programs under this chapter." 20

U.S.C. § 1094(c)(2)(A). If a lender fails to disclose information, the Secretary may limit, suspend, or terminate its participation in the program. 20 U.S.C. § 1083(c). According to the Act, it is the school's duty to inform students about their programs and facilities. See, 20 U.S.C. § 1092(a)(1). See also, 1980 U.S.Cong. and Admin.News, p. 3178 ("lenders ought to confine themselves to making lending decisions and leave education decisions to students, their families, and institutions of post-secondary education."); 50 Fed.Reg. 35966 (1985) to be codified at 34 C.F.R. §§ 682.500—682.515 (forbearance from enforcement of loan.) A student is not entitled to civil damages under any provision of the Act. Since plaintiffs have failed to state a cause of action, leave to amend to seek punitive and compensatory damages must also be DENIED.

Plaintiffs do not dispute that they signed promissory notes and received guaranteed student loans to help finance their education at Adelphi. Plaintiffs attended Adelphi and received some type of educational benefits. None of the plaintiffs allege that they are disabled in any manner, that they have died, or received a discharge in bankruptcy. Therefore, the student loans cannot be discharged. Plaintiffs simply have no remedy under the Higher Education Act for relief from the obligation to repay their student loans. The Higher Education Act and its regulations do not provide the plaintiffs with such a remedy by means of this lawsuit against these defendants. Federal law pre-empts state law remedies and plaintiffs' state law claims for rescission and damages must fail. Further, no implied right of action exists under the Act.

Based on the foregoing, the Motion for Class Certification is DENIED; the Motion for Leave to File Amended Complaint is DENIED; and, WLMA and CSLFC holders' Motions to Dismiss are hereby GRANTED.