**WEST ALLIS MEMORIAL HOSPITAL, INC., a Wisconsin non-profit corporation, Plaintiff,**

v.

**Otis BOWEN, in his capacity as Secretary of the United States Department of Health and Human Services, along with his successors, agents, servants, employees and attorneys; Edwin Meese, in his capacity as Attorney General of the United States, along with his successors, agents, servants, employees and attorneys; and St. Luke's Hospital, Inc., a Wisconsin non-profit corporation, along with its officers, agents, servants, employees and attorneys, Defendants.**

**Civ. A. No. 87–C–0053.**

United States District Court, E.D. Wisconsin.

May 28, 1987.

Robert Friebert, Friebert, Finerty & St. John, S.C., Milwaukee, Wis., for plaintiff.

Melvin Washington, Asst. U.S. Atty., Milwaukee, Wis., for defendants Bowen and Meese.

William Jennaro, Robert Elliott, Cook & Franke, S.C., Milwaukee, Wis., for defendant St. Luke's.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

This case concerns "Freedom 55/65." It has, however, nothing to do with the raging dispute over whether Wisconsin's motorists should have the freedom to drive 65 instead of 55. Instead, it is essentially a tussle between two Milwaukee hospitals over the interpretations to be given to certain provisions of the laws governing Medicare.

*Plaintiff's Motion for Preliminary Injunction*

One of the two hospitals, West Allis Memorial, has filed a motion seeking, in effect, alternative preliminary injunctions against the various defendants. In West Allis's view, the relief it seeks is dependent on the interpretation given to a statute regarding Medicare deductible and coinsurance payments, 42 U.S.C. § 1395nn(b)(2)(B). If I were to determine that the alleged conduct of the second hospital, St. Luke's, is in violation of the statute, then West Allis seeks an injunction preventing St. Luke's from maintaining a program, called "Freedom 55/65," which waives payment of deductible and coinsurance amounts by Medicare beneficiaries, until this lawsuit is concluded or the law is amended to legalize the waiver program. In addition, if St. Luke's is in violation of the statute, West Allis also contends that it is in violation of section 2 of the Sherman Act and section 16 of the Clayton Act, Wisconsin antitrust law, and the common law. On the other hand, if I determine that St. Luke's is not in violation of the statute, West Allis requests that an injunction be issued enjoining the defendants Otis Bowen and Edwin Meese from prosecuting it if it institutes a similar waiver program. In other words, "heads I win; tails you lose," I get an injunction either way. Or, stated another way, if I can't beat 'em, I want to join 'em, albeit in this case, very, very reluctantly.

The standards for the issuance of a preliminary injunction have received a certain amount of attention recently. In *Dynamics Corp. of America v. CTS Corporation*, 794 F.2d 250, 252 (7th Cir.1986), the court stated that:

[T]he task for a district judge asked to grant a preliminary injunction is to compare the irreparable harm to the plaintiff if the injunction is denied, weighted by the likelihood that the denial would be erroneous because the plaintiff will prevail in the plenary trial, with the irreparable harm to the defendant if the injunction is granted, weighted by the likeli-

hood that the grant would be erroneous because the defendant, not the plaintiff, will prevail in the trial.

The court continued, "If both parties are likely to suffer the same amount of irreparable harm, so far as estimation is possible, then likelihood of success becomes decisive."

■ As the court strives to clarify the standards for granting a preliminary injunction, it becomes clear that the factors are no longer of equal importance and that the factor of first importance is irreparable harm. If irreparable harm exists, then it is weighted by the likelihood of success on the merits. If irreparable harm is great, less of a likelihood of success is required to tip the balance. If irreparable harm exists but is of lesser weight, a greater likelihood of success is required to tip the balance.

■ In this case, I will assume for the moment that the irreparable harm West Allis will suffer if the injunction is not issued is great. However, as will be explained below, there is almost no likelihood that West Allis will succeed on the merits of this lawsuit. In that circumstance, it seems clear that the near absence of one of the factors, even one of lesser importance, must prevent the issuance of an injunction.

West Allis Memorial Hospital is a community hospital which obtains almost half of its total gross patient revenue from Medicare patients. St. Luke's Hospital is a teaching hospital located in close geographical proximity to West Allis. It draws a substantial percentage of its patients, including patients eligible for Medicare benefits, from the same population as West Allis does. Therefore, it is West Allis's contention that the two hospitals are in direct competition with each other for Medicare patients.

On January 1, 1987, St. Luke's instituted its "Freedom 55/65" program, which offers to prospective Medicare patients certain special benefits, the principle of which is a waiver of that portion of their hospital bill that is not covered by Medicare. In other words, the patients at St. Luke's who are enrolled in Medicare are not charged the deductible and coinsurance amounts. The result of such a program, according to West Allis, is that elderly persons on fixed incomes will be attracted to St. Luke's to the detriment of West Allis. To meet this threat, West Allis states that it is prepared to offer a program similar to that being offered by St. Luke's and, by the way, apparently by many other hospitals both in this area and throughout the country. However, West Allis is convinced that to offer a waiver program is to commit a felony under 42 U.S.C. § 1395nn(b)(2)(B). Therefore, the hospital is unwilling to institute a waiver program to meet the threat of competition from St. Luke's without a ruling that the conduct will not be prosecuted. It seemed clear and undisputed at the hearing on the temporary restraining order in this case that what West Allis really wants is to prevent St. Luke's from instituting its waiver program, rather than to be allowed to institute one of its own.

42 U.S.C. § 1395nn(b)(2)(B) provides:

(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

. . . .

(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under this title,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

Attached to the complaint in this action is a letter from Richard P. Kusserow, Inspector General in the Department of Health and Human Services, to Stephen S. Trott, Assistant Attorney General, Criminal Division, Department of Justice in Washington. Kusserow writes that, although it appears that the waiver of the deductible is a technical violation of the statute, for various reasons, including that the waiver incurs no cost to the Medicare program, the Department of Justice should

permit the Department of Health and Human Services to notify hospitals that they will not be prosecuted for offering waivers. He requests this relief pending action by Congress to clarify the statute. In response, Trott wrote to Kusserow, disputing in a mild way some of the points that Kusserow makes and concluding that "[t]he Inspector General has no authority to immunize illegal conduct from prosecution." Trott states:

> We believe it would be highly improper for the Department of Justice to state that certain conduct constituting a crime under the laws of Congress will not be prosecuted. Such a statement would be, in effect, a usurpation of Congress' authority to decide the laws of the land.

Trott, however, goes on to point out that because the Department of Justice does not have resources to prosecute every violation of the criminal code, for reasons of policy no one has been prosecuted for this conduct.

It seems clear, then, that at least two departments of the executive branch of the government suspect that a waiver program is covered by the statute, but neither department feels compelled to take the violation seriously. Despite the positions taken by the government, St. Luke's presents a rather convincing argument that the conduct cannot be covered. St. Luke's argues that a more specific statute than section 1395nn is controlling. That statute is 42 U.S.C. § 1395cc(a)(2)(A), which makes the collection of deductible and coinsurance obligations permissive, rather than mandatory. It seems, in St. Luke's view, contradictory that Congress would make the collection of those amounts permissive while at the same time making the failure to collect them a felony.

Given the ambiguity, West Allis turned to the courts to try to resolve its conflict. Unfortunately for the success of West Allis, the case involves the interrelationship of the three branches of the federal government. The executive branch seems to accept that the statute covers the conduct but, in the exercise of prosecutorial discretion, declines to prosecute and, out of deference to Congress, declines to say that it will not prosecute. The executive branch has turned to Congress, as evidenced by Kusserow's letter, to try to get the statute amended to clarify what conduct is prohibited and what kind of conduct is not prohibited. That process is, however, rather lengthy. In the interim, then, West Allis seeks relief from the courts. However, in the scheme of things, this situation is one on which the courts defer to the other branches of government. The problem is for Congress to solve.

Because the courts have a hands-off policy in this situation, it is unnecessary to determine at the present time whether section 1395nn covers St. Luke's waiver program. It really, in the context of the request for preliminary relief, does not matter. West Allis is unlikely to prevail on the merits of either of its requests. An injunction against St. Luke's, on the one hand, for a possible violation of the statute, or on the other hand against the government, would be equally inappropriate.

Assuming, for the moment, that the statute covers St. Luke's waiver program, what West Allis is asking me to do is to enjoin the commission of a crime. One of the principles of our jurisprudence is that "equity will not enjoin a crime." The principle is not without exceptions; however, the present case is not one which requires that an exception be made. The history of the principle was traced briefly in *Securities and Exchange Commission v. Carriba Air, Inc.*, 681 F.2d 1318 (11th Cir.1982). There the court stated that early in the development of the common law, equity did enjoin criminal activity. The function of enjoining criminal activity was then taken over by the Star Chamber until that body was abolished by parliament during the reign of Charles I. After the 1640's, the courts withdrew from the business of enjoining criminal activity, and the maxim that "equity will not enjoin a crime" has been with us ever since. In the *Carriba Air* case, the court noted that there were exceptions established during the eighteenth century for public nuisances that were also crimes. And the court went on to find that, in the area of securities law,

by enacting 15 U.S.C. § 77t, Congress had specifically authorized an injunction to prohibit violations. Under those circumstances, the court determined that the commission of a crime could be enjoined. The facts of the case before me are far different and do not require that an exception to the general principle be made. Therefore, a preliminary injunction against St. Luke's for a violation of the statute is denied.

Although the requests brought under the Sherman Act, the Clayton Act, the Wisconsin Antitrust Act, and the Wisconsin common law are on somewhat different footing, they also rely on the fact that St. Luke's is allegedly committing a crime in order to, for instance, attempt to monopolize the market. Accordingly, the request to enjoin St. Luke's actions under those statutes is also denied.

If, on the other hand, one were to assume that there is no violation of the statute, and I think that a reasonable case can be made for that proposition, then West Allis seeks an injunction against the government defendants preventing them from enforcing the statute. In other words, if West Allis institutes a waiver program, it wants assurance that it will not be prosecuted.

This request runs up against another basic doctrine of equity jurisprudence; that is, that the courts should not act to restrain a criminal prosecution, particularly when the moving party has an adequate remedy at law and will not suffer irreparable injury. The anxiety, cost, and inconvenience of having to defend against a criminal prosecution does not constitute irreparable harm. *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

Admittedly, this is not a typical case in which a party seeks to enjoin a criminal prosecution. Unlike this case, most of the cases in which a federal court is asked to enjoin a criminal prosecution involve state rather than federal prosecutions and, thus, also involve issues of comity. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). Most cases also involve a pending

criminal prosecution, rather than the possibility, however remote, that one might be prosecuted for the violation. However, when no prosecution is likely, another issue, standing, arises. Here, West Allis has only the remotest of chances, as evidenced by the letter from Stephen Trott, of being prosecuted if it institutes a waiver program.

In addition, the cases where courts take seriously a request to enjoin a criminal prosecution are cases in which it is alleged that there is something seriously defective about the statute. Here there is no contention that this statute interferes with any constitutional rights; for instance, there is no contention that it interferes with West Allis's due process rights under the fifth amendment. It is a statute regulating economic activity, presumably under the commerce clause. It is the sort of thing about which courts give great deference to Congress. It differs, then, from cases such as *Penthouse International, Ltd. v. McAuliffe,* 702 F.2d 925, *reh'g,* 717 F.2d 517, *cert. denied,* 465 U.S. 1108, 104 S.Ct. 1615, 80 L.Ed.2d 144, *reh'g denied,* 466 U.S. 994, 104 S.Ct. 2377, 80 L.Ed.2d 849. Even assuming that it somehow is threatened with prosecution and therefore has standing to raise the issue, West Allis does not make any claim that the statute itself is invalid. It simply seeks to have the court substitute its judgment regarding prosecutorial decisions for that of the Department of Justice. It is up to prosecutors to exercise their discretion and to determine who should be prosecuted under valid statutes. If a decision to prosecute is made, the issue of the applicability of the statute to the conduct can be raised in the context of a criminal case.

*Motion for Leave to File a Verified Amended Complaint*

West Allis Memorial Hospital has also filed a motion for leave to file an amended complaint. The request is based on the answer of St. Luke's Hospital, Inc. to the original complaint. In the answer, St. Luke's stated that "St. Luke's Hospital, Inc. and Good Samaritan do not function as a 'single economic unit.'" On the basis of

that answer, West Allis Memorial Hospital seeks to amend its complaint to add a claim based on a violation of section 1 of the Sherman Act. The reasoning is that if St. Luke's and Good Samaritan do not function as a single economic unit, then they can conspire together in restraint of trade under section 1 of the Sherman Act. Although leave has not yet been granted to file the amended complaint, St. Luke's Hospital has filed an answer to the document.

Under Rule 15, leave to amend should be freely granted when justice so requires. The request to file the amendment comes early in this lawsuit, and justice is served by allowing the plaintiff to amend the complaint.

Accordingly, the motion for leave to file a verified amended complaint is granted.

*Plaintiff's Supplemental Motion for Preliminary Injunction*

Based on the amended complaint, West Allis Memorial seeks an injunction against the alleged violation of section 1 of the Sherman Act. The illegal conduct which forms the basis for the Sherman Act claim is the violation of section 1395nn. Accordingly, for the reasons stated in denying the original request for a preliminary injunction, the request is denied.