852 F.2d 251
 57 USLW 2076, 22 Soc.Sec.Rep.Ser. 353,
Medicare&Medicaid Gu 37,198
 WEST ALLIS MEMORIAL HOSPITAL, INC., a Wisconsin non-profit
corporation, Plaintiff-Appellant,
v.
Otis BOWEN, in his capacity as Secretary of the United
States Department of Health and Human Services, along with
his successors, agents, servants, employees and attorneys;
Edwin Meese, in his capacity as Attorney General of the
United States, along with his successors, agents, servants,
employees and attorneys; and St. Luke's Hospital, Inc., a
Wisconsin non- profit corporation, along with its officers,
agents, servants, employees and attorneys, Defendants-Appellees.
 No. 87-1974.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1987.
Decided July 14, 1988.
 
 1
 Robert H. Friebert, Friebert, Finerty & St. John, S.C., Milwaukee, Wis., for plaintiff-appellant.
 
 
 2
 Kathy L. Nusslock, Cook & Franke, S.C., John J. Meyer, Asst. U.S. Atty. (Patrica J. Gorence, U.S. Atty.), Milwaukee, Wis., for defendants-appellees.
 
 
 3
 Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*
 
 
 4
 GRANT, Senior District Judge.
 
 
 5
 West Allis Memorial Hospital, Inc. ("West Allis") brought suit against St. Luke's Hospital, Inc. ("St. Luke's"), the Secretary of Health and Human Services, Otis Bowen, and the Attorney General of the United States, Edwin Meese (the "federal defendants"), challenging the applicability of the Medicare-Medicaid antifraud provisions of 42 U.S.C. Sec. 1395nn(b)(2)(B) to a program instituted and advertised by St. Luke's and known as "Freedom 55/65."[1]
 
 
 6
 The "Freedom 55/65" program was commenced on or about January 1, 1987,[2] and offers a number of advantages to Medicare patients who enroll in the program. This lawsuit focuses on but one of those advantages--the waiver of the deductible and coinsurance obligations of Medicare patients who receive items or services from St. Luke's in the event the patient does not have supplemental insurance which would otherwise pay those obligations. The waiver program applies to items and services covered under both Medicare Part A and B.[3]
 
 
 7
 As a competitor for Medicare patients in the Milwaukee area, West Allis fears the effects St. Luke's waiver program will have on its ability to remain competitive. West Allis maintains that it is prepared to meet that threat by implementing its own waiver program, but believes such a program to be violative of the anti-fraud provisions of 42 U.S.C. Sec. 1395nn(b)(2)(B) and fears criminal prosecution under the statute if it chooses to implement such a program.
 
 
 8
 Fearing the loss of business on the one hand, and the risk of prosecution on the other, West Allis turned to the courts for resolution of its dilemma. In its complaint, West Allis alleges that St. Luke's waiver program is violative of not only Sec. 1395nn(b)(2)(B), but also federal and state antitrust laws, and the Wisconsin common law against conspiracy, tortious interference with prospective contractual relations, and unfair competition. West Allis moved for preliminary injunctive relief against St. Luke's under each count of the complaint, and for alternative injunctive relief against the federal defendants under Sec. 1395nn(b)(2)(B). With respect to the Sec. 1395nn claim, West Allis asked that the district court either declare St. Luke's waiver program violative of the statute and enjoin St. Luke's continuation of that program, or alternatively declare such programs nonviolative of Sec. 1395nn(b)(2)(B) and enjoin the federal defendants from enforcing the provisions thereof against Medicare providers such as West Allis which may seek to implement a similar program.
 
 
 9
 A hearing on West Allis' motion for preliminary injunction was conducted on January 23, 1987, and on May 28, 1987, the district court issued an order denying the motion in its entirety. West Allis Memorial Hospital, Inc. v. Bowen, 660 F.Supp. 936 (E.D.Wis.1987). This appeal followed.
 
 I. Standard of Review
 
 10
 "In reviewing the decision of a district court to grant or deny a preliminary injunction, this court has continued to invoke the phrase 'abuse of discretion' in articulating the applicable standard." Darryl H. v. Coler, 801 F.2d 893, 897 (7th Cir.1986); see also Baja Contractors, Inc. v. City of Chicago, 830 F.2d 667, 674 (7th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988). Under Fed.R.Civ.P. 52(a), the district court is required to make findings of fact and conclusions of law in support of its decision to grant or refuse preliminary injunctive relief. The ultimate decision, however, rests within the court's discretion. Baja Contractors, 830 F.2d at 674; Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1436-37 (7th Cir.1986). The district court's findings of fact are reviewed under the clearly erroneous standard of Fed.R.Civ.P. 52(a); with the legal conclusions subject to de novo review. Baja Contractors, 830 F.2d at 674; Manbourne, Inc. v. Conrad, 796 F.2d 884, 887 (7th Cir.1986); Lawson Products, 782 F.2d at 1437. "[A] factual or legal error may alone be sufficient to establish that the court 'abused its discretion' in making its final determination.... However, in the absence of such an error, the district judge's weighing and balancing of the equities should be disturbed on appeal only in the rarest of cases." Lawson Products, 782 F.2d at 1437. We review the district court's denial of a preliminary injunction in the present case with these principles in mind.
 
 II. Discussion
 
 11
 West Allis, as the party seeking a preliminary injunction, bears the burden of showing:
 
 
 12
 (1) that it has no adequate remedy at law; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm it will suffer if the preliminary injunction is not granted outweighs the irreparable harm the defendant will suffer if the injunction is granted; (4) that it has a reasonable likelihood of prevailing on the merits; and (5) that the injunction will not harm the public interest.
 
 
 13
 Baja Contractors, 830 F.2d at 675; Manbourne, Inc., 796 F.2d at 887; Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 386-88 (7th Cir.1984). Under the "sliding scale" approach adopted by this circuit, the likelihood of success that West Allis needs to show will vary inversely with the degree of harm it will suffer if the injunction is not granted. Illinois Psychological Ass'n v. Falk, 818 F.2d 1337, 1340 (7th Cir.1987); Brunswick Corp. v. Jones, 784 F.2d 271, 275 (7th Cir.1986); Roland Machinery Co., 749 F.2d at 387. If, however, "both parties are likely to suffer the same amount of irreparable harm, so far as estimation is possible, then likelihood of success becomes decisive." Dynamics Corp. of America v. CTS Corp., 794 F.2d 250, 252 (7th Cir.1986), rev'd on other grounds, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987).
 
 
 14
 A. Medicare Fraud: 42 U.S.C. Sec. 1395nn(b)(2)(B)
 
 
 15
 West Allis sought preliminary injunctive relief against St. Luke's waiver program under 42 U.S.C. Sec. 1395nn(b)(2)(B) which provides:
 
 
 16
 Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person--to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any item or service for which payment may be made in whole or in part under this subchapter ... shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
 
 
 17
 In denying the preliminary injunction, the district court assumed, without specifically finding, that great irreparable harm would be suffered by West Allis if the injunction were to be denied, but concluded that there was "almost no likelihood that West Allis [would] succeed on the merits," because it could not show any entitlement to the injunctive relief sought. West Allis Memorial Hospital, 660 F.Supp. at 938-39. In so ruling, the court relied on a long-standing doctrine that "equity will not enjoin the commission of a crime," and found that no exception to that doctrine was warranted under the circumstances. Id. at 939-40. The district court therefore did not reach the ultimate issue of whether St. Luke's waiver program was violative of Sec. 1395nn(b)(2)(B).
 
 
 18
 West Allis contends on appeal that the district court abused its discretion when it found that it could not employ its equitable powers to enjoin the criminal activity complained of. While West Allis acknowledges that courts generally will not enjoin a crime, it maintains that the present case falls within one of the recognized exceptions to that doctrine under which a court may enjoin criminal activity when statutorily authorized to do so. United States v. Jalas, 409 F.2d 358, 360 (7th Cir.1969). Arguing that such authority exists under Sec. 1395nn, and that the statute creates an implied private right of action in favor of Medicare providers, West Allis concludes that the denial of the preliminary injunction constitutes a reversible error of law. We do not agree.
 
 
 19
 While the district court did not address the issue of standing under an implied right of action, our review must begin at that point, for the power of the federal courts to entertain an action is not unlimited. As the Supreme Court recently noted in Bender v. Williamsport Area School District, 475 U.S. 534, 106 S.Ct. 1326, 1328, 89 L.Ed.2d 501 (1986):
 
 
 20
 [E]very federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,".... Mitchell v. Maurer, 293 U.S. 237, 244 [55 S.Ct. 162, 165, 79 L.Ed. 338] (1934). See Juidice v. Vail, 430 U.S. 327, 331-332 [97 S.Ct. 1211, 1215, 51 L.Ed.2d 376] (1977) (standing).... "[When the lower court] lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." United States v. Corrick, 298 U.S. 435, 440 [56 S.Ct. 829, 831, 80 L.Ed. 1263] (1936) (footnotes omitted).
 
 
 21
 475 U.S. at 541, 106 S.Ct. at 1331.
 
 
 22
 To the extent West Allis asserts standing under Sec. 1395nn, based on a perceived implied private right of action, we find its arguments unpersuasive. A strong presumption exists against the creation of such implied rights of action. Community & Economic Development Ass'n of Cook County, Inc. v. Suburban Cook County Area Agency on Aging, 770 F.2d 662, 664 (7th Cir.1985). The factors which a court should consider in determining whether such a right exists include: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether it is "consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff"; and, (4) whether "the cause of action was one traditionally relegated to state law." Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (citations omitted). The ultimate question, however, is whether Congress intended to provide such a right in enacting the statute. Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134, 145-48, 105 S.Ct. 3085, 3091-93, 87 L.Ed.2d 96 (1985); Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 377-78, 102 S.Ct. 1825, 1838-39, 72 L.Ed.2d 182 (1982); Cort v. Ash, 422 U.S. at 78, 95 S.Ct. at 2087; City of Evanston v. Regional Transportation Authority, 825 F.2d 1121, 1123 (7th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988).
 
 
 23
 In the present case, we find that neither the structure of Sec. 1395nn nor its legislative history suggests that Congress intended to provide a private remedy to Medicare providers such as West Allis which may be injured as a result of a competitor's noncompliance with the provisions of that statute. The Secretary of Health and Human Services is charged with the administration of the Medicare program pursuant to 42 U.S.C. Sec. 1395kk. He is aided in that endeavor by the Attorney General, whose duty it is to enforce the laws and Constitution of the United States. Where a statute is framed as a "general prohibition or command to a federal agency," as it is in the present case, a private right of action will seldom be implied. City of Evanston v. Regional Transportation Auth., 825 F.2d at 1123, quoting Rapid Transit Advocates v. Southern California Rapid Transit District, 752 F.2d 373, 376 (9th Cir.1985). The legislative history of Sec. 1395nn further supports the conclusion that it is the Government, and not private parties, which is charged with the enforcement of the Medicare program where it identifies the purpose of Sec. 1395nn as:
 
 
 24
 Legislation to amend the Social Security Act to strengthen the capability of the Government to detect, prosecute, and punish fraudulent activities under the Medicare and Medicaid programs....
 
 
 25
 1977 U.S.Code Cong. & Admin.News 3039, 3040. (Emphasis added). Whether this purpose would be better achieved by arming providers such as West Allis with the authority to enforce the provisions of Sec. 1395nn is a judgment better left to Congress. See Drake v. Honeywell, Inc., 797 F.2d 603, 611 (8th Cir.1986).
 
 
 26
 Finding no intent on the part of Congress to create a private right of action in favor of West Allis, "we need not carry the Cort v. Ash inquiry further." Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 94 n. 31, 101 S.Ct. 1571, n. 31, 67 L.Ed.2d 750 (1981); see also Massachusetts Mutual Life Insurance Co., 473 U.S. at 148, 105 S.Ct. at 3093. The resolution of the question of standing also obviates the need for this court to determine whether a waiver program such as St. Luke's violates the language of Sec. 1395nn(b)(2)(B)--an issue which Congress has clearly recognized and chosen to deal with in its own way.[4]
 
 
 27
 Even assuming West Allis had the requisite standing to bring an action under Sec. 1395nn, we would concur with the district court in finding that no exception to the equitable doctrine against enjoining criminal activity was warranted. There are three recognized exceptions to the doctrine: national emergencies, widespread public nuisances, and where a specific statutory grant of power exists authorizing injunctive relief. United States v. Jalas, 409 F.2d at 360. West Allis does not contend that it falls within the first two exceptions, and we find nothing in the language of Sec. 1395nn which would authorize the issuance of an injunction against violators thereof. Absent such specific statutory authority, the district court was powerless to enter the injunctive relief requested.
 
 
 28
 We find that West Allis' claim for preliminary injunctive relief against the federal defendants is similarly without merit. In denying such relief, the district court found: (1) that equity jurisprudence barred the court from acting to restrain a criminal prosecution where the movant had an adequate remedy at law, and the only harm suffered was the "anxiety, cost, and inconvenience of having to defend against a criminal prosecution," Trainer v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); (2) that "West Allis ha[d] only the remotest of chances ... of being prosecuted if it institute[d] a waiver program" and therefore lacked standing to seek injunctive relief against any prospective criminal prosecution; and, (3) that even assuming that West Allis was sufficiently threatened with prosecution to establish standing, the court should defer to the Department of Justice in determining who should be prosecuted under Sec. 1395nn where, as here, the statute itself was not challenged as constitutionally invalid. West Allis Memorial Hospital, 660 F.Supp. at 940.
 
 
 29
 We find no error in the district court's ruling. Even if we assume, as did the district court, that West Allis has established the requisite standing, there is a "heavy presumption against enjoining pending or threatened criminal prosecutions." Downstate Stone Co. v. United States, 651 F.2d 1234, 1238 (7th Cir.1981). In the absence of a showing of exceptional circumstances, a federal court generally will not use its equitable powers to prevent the enforcement of a criminal statute which is concededly valid and constitutional. See Spielman Motor Sales Co., Inc. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322 (1935); Downstate Stone Co., 651 F.2d at 1238; Ivy v. Katzenbach, 351 F.2d 32, 34-35 (7th Cir.), cert. denied, 382 U.S. 958, 86 S.Ct. 437, 15 L.Ed.2d 362 (1965). West Allis has failed to demonstrate that such circumstances exist in the present case, and that judicial interference is warranted.
 
 B. The Antitrust and Common Law Claims
 
 30
 The district court summarily denied West Allis' claim for preliminary injunctive relief under each of the remaining seven counts of the complaint, stating that:
 
 
 31
 Although the requests brought under the Sherman Act, the Clayton Act, the Wisconsin Antitrust Act, and the Wisconsin common law are on somewhat different footing, they also rely on the fact that St. Luke's is allegedly committing a crime in order to, for instance, attempt to monopolize the market.
 
 
 32
 West Allis Memorial Hospital, 660 F.Supp. at 940.[5] The court's decision was presumably based on its previous conclusion that it was powerless to enjoin the commission of a crime. In so ruling, however, the district court failed to recognize that authority may exist under each of West Allis' remaining claims for the issuance of an injunction.
 
 
 33
 To the extent West Allis has demonstrated a viable claim under the Sherman Act, 15 U.S.C. Secs. 1 and 2, independent of its claim under the Medicare fraud provisions of 42 U.S.C. Sec. 1395nn(b)(2)(B) (a matter which the parties dispute), the Clayton Act, 15 U.S.C. Sec. 26, expressly provides the court with the statutory authority to enjoin the criminal activity complained of.[6]
 
 
 34
 Wisconsin law provides similar relief for violations of its antitrust laws. W.S.A. Sec. 133.16 specifically provides that:
 
 
 35
 Any circuit court may prevent or restrain, by injunction or otherwise, any violation of this chapter. The department of justice, any district attorney or any person by complaint may institute actions or proceedings to prevent or restrain a violation of this chapter, setting forth the cause and grounds for the intervention of the court and praying that such violation, whether intended or continuing be enjoined or prohibited. When the parties informed against or complained of have been served with a copy of the information or complaint and cited to answer it, the court shall proceed, as soon as may be in accordance with its rules, to the hearing and determination of the case; and pending the filing of the answer to such information or complaint may, at any time, upon proper notice, make such temporary restraining order or prohibition as is just....
 
 
 36
 When exercising pendent jurisdiction over the state law claims, the district court has the same equitable powers as the state court. See United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (federal courts exercising pendent jurisdiction bound to apply state substantive law). The district court erred in failing to recognize that antitrust activity may be enjoined under both federal and state law, and in so doing committed an error of law.[7]
 
 
 37
 While West Allis makes several conclusory statements about the power of the district court to enjoin activity which may also violate Wisconsin common law, it specifically addresses only its claim of unfair competition, and generally abandons its remaining common law claims, making only cursory arguments in its reply brief. The burden was on West Allis to demonstrate an abuse of discretion on the part of the district court with respect to each of its claims. In failing to present any authority for its proposition that a state court, and thus the district court, was empowered to enjoin a common law conspiracy or tortious interference with a prospective contractual relation, West Allis failed to meet that burden. We accordingly limit our discussion to West Allis' claim of unfair competition.
 
 
 38
 St. Luke's does not dispute the availability of injunctive relief under the Wisconsin common law against unfair competition, but argues that unfair competition is limited to misappropriation and that West Allis has failed to demonstrate elements of a misappropriation claim, and has thus failed to demonstrate a likelihood of success on the merits of its claim.
 
 
 39
 Under Wisconsin law, injunctive relief is indeed available to a private entity in an action for unfair competition based on misappropriation. See Mercury Records v. Economic Consultants, 91 Wis.2d 482, 283 N.W.2d 613 (Wis.App.1979). Injunctive relief is also statutorily provided for under W.S.A. Sec. 100.20 which prohibits unfair methods of competition in business, although it appears from the language of the statute that only the state has the authority to seek such relief.
 
 
 40
 Whether injunctive relief would be available to West Allis only in an action based on misappropriation, or is available when other methods of unfair competition are alleged, and whether West Allis has sufficiently demonstrated a reasonable likelihood of success on the merits of its unfair competition claim are questions better left for the district court to determine. We find merely that in denying the preliminary injunction without recognizing that authority may exist under state law for the issuance of an injunction the district court committed an error of law.
 
 
 41
 While it would appear from the extensive arguments presented on appeal that the parties would prefer de novo review by this court of the merits of West Allis' antitrust and common law claims, we regretfully cannot oblige. Our de novo review is limited to legal issues and conclusions. See Thornburgh v. American College of Obstetricians, 476 U.S. 747, 757, 106 S.Ct. 2169, 2177, 90 L.Ed.2d 779 (1986); Baja Contractors, Inc. v. City of Chicago, 830 F.2d at 674; Faheem-El v. Klincar, 814 F.2d 461, 467 (7th Cir.1987). Even then we may decide the merits of legal issues which were not addressed by the district court only when the facts on which those conclusions must be based are not in dispute. Faheem-El, 814 F.2d at 467. In the present case, there are a number of factual disputes which prohibit our consideration of the legal issues presented by West Allis' antitrust and unfair competition claims--disputes which were not resolved by the district court in making its findings of fact.[8]
 
 
 42
 By limiting its legal analysis to only one of the five factors necessary to support preliminary injunctive relief, the district court leaves us with but one alternative--to reverse its decision with respect to West Allis' federal and state antitrust claims, and its common law claim of unfair competition, and remand for further consideration.[9] See American Can Co. v. Mansukhani, 742 F.2d 314, 326 (7th Cir.1984) ("When the district court's error is the very predicate of its order, the order must be reversed as an improvident exercise of the court's discretion.")
 
 III. Conclusion
 
 43
 For the foregoing reasons, we now AFFIRM the decision of the district court in part, and REVERSE AND REMAND in part. Finding that West Allis lacks the requisite standing to assert a claim against St. Luke's under 42 U.S.C. Sec. 1395nn(b)(2)(B); that the statute does not provide the injunctive relief which West Allis seeks; and that West Allis has failed to demonstrate extraordinary circumstances warranting injunctive relief against the federal defendants, we AFFIRM the district court's denial of preliminary injunctive relief under Sec. 1395nn(b)(2)(B). We also AFFIRM the decision of the district court with respect to West Allis' common law claims of conspiracy and tortious interference with prospective contractual relations, as West Allis has failed to demonstrate any abuse of discretion on the part of the district court with respect to those claims. We, however, REVERSE the district court's denial of preliminary injunctive relief with respect to West Allis' federal and state antitrust claims and its common law claim of unfair competition, and REMAND for further consideration.
 
 
 
 *
 Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 In 1987, Sec. 1395nn was repealed and the statute renumbered and amended by Secs. 4 and 14 of the Medicare and Medicaid Patient and Program Protection Act of 1987, 42 U.S.C. Sec. 1320a-7b
 
 
 [2]
 The "Freedom 55/65" program was commenced prior to the August 18, 1987 enactment of the Medicare and Medicaid Patient and Program Protection Act. While the language of Sec. 1320a-7b(b)(2)(B) is virtually identical to that of former Sec. 1395nn(b)(2)(B), we will continue to refer throughout our discussion to Sec. 1395nn as it existed prior to its 1987 amendment
 
 
 [3]
 Medicare Part A provides insurance coverage for inpatient hospital care and certain other kinds of medical services. See 42 U.S.C. Sec. 1395c, et seq. Medicare Part B (outpatient services) provides for a system of optional supplemental insurance for medical care not covered under Medicare Part A. See 42 U.S.C. Sec. 1395j, et seq
 
 
 [4]
 Section 14(a) of the Medicare and Medicaid Patient and Program Protection Act of 1987 amending former Sec. 1395nn (now Sec. 1320a-7b) provides:
 The Secretary of Health and Human Services, in consultation with the Attorney General, not later than 1 year after the date of the enactment of this Act [Aug. 18, 1987] shall publish proposed regulations, and not later than 2 years after the date of the enactment of this Act shall promulgate final regulations, specifying payment practices that shall not be treated as a criminal offense under section 1128B(b) of the Social Security Act [42 U.S.C. Sec. 1320a-7b(b) ] and shall not serve as the basis for an exclusion under section 1128(b)(7) of such Act. Any practices specified in regulations pursuant to the preceding sentence shall be in addition to the practices described in subparagraphs (A) through (C) of section 1128B(b)(3) [42 U.S.C. Sec. 1320a-7b(b)(3) ].
 See Pub.L. 100-93 Sec. 14(a), Standards for Anti-Kickback Provisions; Regulations, set out as a note under 42 U.S.C. Sec. 1320a-7b. In enacting Sec. 14(a), Congress recognized that the statutory language of Sec. 1395nn(b)(2)(B) "has created uncertainty among health care providers as to which commercial arrangements are legitimate, and which are proscribed," S.Rep. No. 109, 100th Cong., 1st Sess. 27, reprinted in 1987 U.S.Code Cong. & Admin. News 682, 707, and expressed its intention to deal with the problem. Once enacted, the HHS regulations will be entitled to the same judicial enforcement accorded Congressional legislation. Batterton v. Francis, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977); United States v. Mersky, 361 U.S. 431, 437-38, 80 S.Ct. 459, 463, 4 L.Ed.2d 423 (1960).
 
 
 [5]
 With respect to West Allis' claim under section 1 of the Sherman Act, 15 U.S.C. Sec. 1, which was added in an amended complaint and made the subject of a supplemental motion for preliminary injunction, the district court concluded that:
 The illegal conduct which forms the basis for the Sherman Act claim is the violation of section 1395nn. Accordingly, for the reasons stated in denying the original request for a preliminary injunction, the [supplemental] request is denied.
 West Allis Memorial Hospital, 660 F.Supp. at 941.
 
 
 [6]
 15 U.S.C. Sec. 26 provides in pertinent part:
 Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws ... when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue.
 
 
 [7]
 The type of factual and legal analysis which was required in the present case is similar to that undertaken in Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc., 603 F.Supp. 1077 (S.D.Ind.1985), aff'd, 784 F.2d 1325 (7th Cir.1986) (a case which we find to be similar in many respects to that presented by West Allis)
 
 
 [8]
 Factual disputes exist, for example, as to the size of the "relevant market" and extent of the parties' "market share" (facts which go to whether St. Luke's is capable of monopolizing trade under 15 U.S.C. Sec. 2); and as to whether St. Luke's and Good Samaritan, both owned by the same parent corporation, are capable of conspiring to restrain trade in violation of 15 U.S.C. Sec. 1
 
 
 [9]
 While we do not require that a district court address each of the five factors necessary to support a preliminary injunction in every case in which such relief is denied, see Curtis v. Thompson, 840 F.2d 1291, 1297 (7th Cir.1988), by limiting its analysis to a single factor, the district court has seriously restricted the scope of review on appeal--a result which might have been avoided by a more detailed analysis and consideration of each of the factors